

**FILED**

**9:41 am, 12/16/24**

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

ROBERT CHEN and OTTERSEC LLC,

        Plaintiffs,

    VS.

DAVID CHEN,

        Defendant,

Case No.  2:24-CV-00198

---

**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE AND DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE AS MOOT**

---

THIS MATTER comes before the Court pursuant to Defendant David Chen's *Motion to Transfer to the District of Maryland* (ECF No. 8) filed on November 12, 2024 and *Motion to Dismiss for Improper Venue* (ECF No. 24 –26). Having reviewed the arguments and the record herein, the Court finds that Defendant's motion should be **GRANTED**. The Court further finds that Defendant's *Motion to Dismiss for Improper Venue* (ECF No. 24–26) should be **DENIED** as **MOOT**.

## BACKGROUND

### 1.  Factual Background

Plaintiff Robert Chen and Defendant David Chen (no relation) met through a high school cybersecurity competition in 2019. ECF No. 16 at 2. In February 2022, they

formed their company, OtterSec, to perform security audits for cryptocurrency platforms and conduct cryptocurrency trading. *Id*. While Robert is a resident of Washington and David is a resident of Maryland, the two chose to register OtterSec as an LLC in Wyoming. *Id*. Because David was a minor at the time of OtterSec's formation, his father, Sam Chen, held his interest in the company. *Id*. Despite this, David held himself out as a member, co-owner, and co-founder of OtterSec. *Id*. at 7. Robert was the only other member and at first held an equal 50% share of the company. *Id*. However, in April 2022, Sam transferred 10% of his membership interest to Robert on David's request to better align company ownership with the different levels of work that Robert and David were completing. ECF No. 9, Ex. 2 at 9–10.

OtterSec was immediately profitable and quickly began attracting attention, and Robert and David began meeting with potential investors in March 2022. ECF No. 16 at 17. David was not present at all such meetings. ECF No. 9, Ex. 2 at 8–10. In late April 2022, Robert allegedly negotiated a tentative offer for OtterSec's acquisition by Jump Crypto, an investing division of trading firm Jump Trading. *Id*. at 7–14. Shortly after learning that the offer Robert negotiated would not include him moving to Jump or Jump acquiring Sam's interest in OtterSec, David allegedly stopped completing work for OtterSec and removed certain pieces of important code from Robert and OtterSec's access. *Id*. at 13–16. According to Robert, David used this code to independently make an approximate $500,000 in profits after he absconded with it. ECF No. 16 at 20–21.

Beginning in May 2022, Sam and David allegedly received communications from an attorney indicating that Robert was planning to dissolve OtterSec and distribute its

assets. ECF No. 9, Ex. 2 at 18–19. Sam and David retained their own counsel and parties began discussing various disputes. *Id*. However, on July 13, 2022, Sam passed away in a car accident. *Id*. at 21. In September 2022, Robert dissolved the company and allegedly purchased all its assets and legal claims, including any potential claims against David. ECF No. 16 at 21. He also formed two new LLCs in South Dakota called Otter Audits and RC Security. ECF No. 9, Ex. 2 at 22.

### 2. Procedural Background

On March 31, 2023, David's mother and Sam's widow, Li Fen Yao, filed a lawsuit in the Federal District of Maryland against Robert and the two South Dakota LLCs on behalf of Sam's estate. ECF No. 9, Ex. 2. Yao's lawsuit asserts that Robert improperly dissolved OtterSec after Sam's death and misappropriated its assets, opportunities, and other property for his new South Dakota LLCs to the exclusion of Sam's estate. *Id*. at 3–4. Among other relief, Yao's case seeks an award of damages, a declaratory judgment finding that Robert's dissolution of OtterSec was improper and invalid, and an order requiring Robert to "disgorge all compensation and benefits he obtained during the course of his breaches of fiduciary duties, faithless service, and other wrongful conduct." *Id*. at 33–35.

Rather than attempt to join David as a third party to the Maryland case, Robert filed his own separate lawsuit against David before this Court on September 30, 2024. ECF No. 1. On November 25, 2024, Robert amended his complaint to add OtterSec as an additional plaintiff, whose claims he allegedly owns pursuant to his asset purchase during OtterSec's dissolution. ECF No. 16. Robert's lawsuit focuses on David's alleged April

2022 removal of OtterSec code and additionally asserts that David stole approximately

$23,868 worth of cryptocurrency tokens from OtterSec's virtual wallet in February 2024.

*Id*. at 18–22. Among other relief, Robert seeks an award of damages and an order

requiring David to "disgorge all benefits obtained during the course of his breach of

fiduciary duty and wrongful conduct." *Id*. at 35–36.

On November 12, 2024, David filed a motion to transfer the Wyoming case to the

Federal District of Maryland, where Yao's case against Robert is still underway. ECF No.

8. On December 13, 2024, while the transfer motion was under the Court's consideration,

David filed an alternative motion to dismiss for improper venue. ECF No. 24–26. As the

Court holds herein that transfer is appropriate, it does not reach the issue of whether

venue is proper in the District of Wyoming as raised by Defendant's motion to dismiss.

## LEGAL STANDARD

28 U.S.C. § 1404(a) dictates motions to transfer in the Tenth Circuit and provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought or to any district or division to which all parties have consented." *Emps.*

*Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). When

considering a transfer motion, courts should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and other
> sources of proof, including the availability of compulsory process to insure
> attendance of witnesses; the cost of making the necessary proof; questions
> as to the enforceability of a judgment if one is obtained; relative advantages
> and obstacles to a fair trial; difficulties that may arise from congested
> dockets; the possibility of the existence of questions arising in the area of
> conflict of laws; the advantage of having a local court determine questions

> of local law; and[ ] all other considerations of a practical nature that make a
> trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991)

(internal quotation marks omitted). The moving party "bears the burden of establishing

that the existing forum is inconvenient," and "merely shifting the inconvenience from one

side to the other… is not a permissible justification for a change of venue." *Emps. Mut.*

*Cas. Co.*, 618 F.3d at 1165–66. Generally, the district court enjoys discretion in

adjudicating motions for transfer "according to an 'individualized, case-by-case

consideration of convenience and fairness.'" *Chrysler Credit Corp.*, 928 F.2d at 1516

(quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

　　　While § 1404(a) generally governs, other courts within the Tenth Circuit have also

considered transfer motions under the "first-to-file rule." *See, e.g., Jim v. CoreCivic of*

*Tennessee, LLC*, No. CIV 20-0618 JB/JFR, 2021 WL 4990084, at *11 (D.N.M. Oct. 27,

2021); *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010);

*Dumanian v. Schwartz*, No. 20-CV-01800-PAB-MEH, 2021 WL 1210033 (D. Colo. Mar.

31, 2021). The rule recognizes the principle that "when two courts have concurrent

jurisdiction, the first court in which jurisdiction attaches has priority to consider the

case," and applies depending on the chronology of events as well as "the similarities in

the parties, issues, and claims." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161,

1163 (10th Cir. 1982); *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118,

1124–27 (10th Cir. 2018). While the Tenth Circuit has "adopted the first-to-file rule as a

baseline," it has explained it only the context of abstention rather than transfer. *See*

*Wakaya Perfection, LLC*, 910 F.3d at 1124; *Hospah Coal Co.*, 673 F.2d at 1163.

Moreover, as Congress enacted § 1404(a) with the intention "to revise rather than merely

codify the common law" the Court agrees with the Plaintiff that if considered in the

context of transfer, the first-to-file rule should "guide[] the district court's exercise of

discretion" under § 1404(a) rather than provide an independent and alternative basis for

transfer. *See* ECF No. 19 at 3; *Chrysler Credit Corp.*, 928 F.2d at 1515; *In re Bozic*, 888

F.3d 1048, 1054 (9th Cir. 2018); *see also In re SK hynix Inc.*, 847 F. App'x 847, 853–54

(Fed. Cir. 2021) (describing the first-to-file rule as "a tool affecting the customary multi-

factor analysis of convenience and interests of justice" under § 1404).

## ANALYSIS

Defendant argues that transfer to the District of Maryland is appropriate under

either the first-to-file rule or § 1404(a)'s discretionary factors. ECF No. 9 at 6. Plaintiff

disputes both grounds for transfer as well as Defendant's characterization of the first-to-

file rule. *See* ECF No. 19. While the Court agrees that Defendant has mischaracterized

application of the first-to-file rule as an alternative and independent avenue for transfer, a

§ 1404(a) analysis informed by the first-to-file rule regardless leads the Court to conclude

that transfer is appropriate.

**1. This case could have been brought in the District of Maryland.**

First, the Court may only transfer a case to another district "where it might have

been brought." 28 U.S.C. § 1404(a). Here, no party argues that Plaintiff's claims could

not have been brought in the District of Maryland. The Maryland court would have the

same subject matter jurisdiction as this Court, stemming from both federal question

jurisdiction pursuant to 28 U.S.C. § 1331 based on Plaintiff's claim under the Defend

Trade Secrets Act, 18 U.S.C. § 1836, and diversity jurisdiction pursuant to 28 U.S.C. §

1332. ECF No. 16 at 6. As Defendant is a Maryland resident, both personal jurisdiction

and venue would also be immediately proper. *Bristol-Myers Squibb Co. v. Superior Ct. of*

*California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017); 28 U.S.C. §§ 1391(b)(1)–(2).

The Court therefore proceeds to analysis under the § 1404(a) discretionary factors.

**2.  The § 1404(a) factors as informed by the first-to-file rule weigh towards transfer.**

    **a.  Plaintiff's choice of forum receives little deference.**

Generally, the plaintiff's choice of forum weighs against transfer and should

"rarely be disturbed" "unless the balance is strongly in favor of the movant." *Scheidt v.*

*Klein*, 956 F.2d 963, 965 (10th Cir. 1992). However, the plaintiff's choice of forum

receives less deference if the plaintiff does not reside in that district, and "[c]ourts accord

little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit

have no material relation or significant connection to the plaintiff's chosen forum.'"

*Employers Mut. Cas. Co.*, 618 F.3d at 1168 (quoting *Cook v. Atchison, Topeka & Santa*

*Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

Here, plaintiffs are now-dissolved Wyoming LLC OtterSec and Washington

resident Robert Chen, who is OtterSec's only surviving member and is allegedly

responsible for OtterSec's claims pursuant to a 2022 asset purchase agreement. ECF No.

16 at 3, 5. OtterSec's status as a Wyoming LLC is the only connection between the facts

at issue and the Wyoming forum. While Plaintiffs assert that this connection is enough to

find a material relation to Wyoming, the case they cite for this proposition involved

parties who had relevant Wyoming real estate interests and local ties, as well as who

regularly visited the state. *See Brown v. RailCrew Xpress, LLC*, No. 09-cv-176, 2009 WL

10670544, at *2 (D. Wyo. Nov. 19, 2009). In contrast, to the Court's knowledge, neither

OtterSec nor any party here has ever had any property physically located in Wyoming.

*See* ECF No. 16. In fact, the Court has no evidence that any party in this case has ever

even *been* to Wyoming, much less taken any actions relevant to this case within the

state's physical borders. *See id*. The Court therefore affords little deference to Plaintiffs'

choice of forum here.

> **b.  The movant fails to show that Wyoming is inconvenient for witnesses.**

"The convenience of witnesses is the most important factor in deciding a motion

under § 1404(a)." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (quoting *Cook*, 816 F.

Supp. at 669). In order to demonstrate inconvenience, the moving party must "(1) identify

the witnesses and their locations; (2) indicate the quality or materiality of the[ir]

testimony; and (3) show[ ] that any such witnesses were unwilling to come to trial ... [,]

that deposition testimony would be unsatisfactory[,] or that the use of compulsory

process would be necessary." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (internal

quotation marks omitted). The movant must do more than merely make "a general

allegation that necessary witnesses are located in the transferee forum." *See id.* (citing 15

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

*Procedure* § 3851, at 227–28 (3d ed. 2007)).

Here, while Defendant asserts that "nearly all of the witnesses in this case are already witnesses in the Maryland Action and none are located in Wyoming" and references Maryland witnesses Ryze Labs and Jump Capital, he fails to speak to the quality or materiality of their testimony, their potential willingness to come to trial, the potential adequacy of their deposition testimony, or any need for compulsory process. *See* ECF No. 9 at 10. His arguments therefore do not surpass the level of general allegations and do not swing this factor in his favor.

### c.  There is a preference for local courts to decide local law.

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Employers Mut. Cas. Co.*, 618 F.3d at 1170. As OtterSec is a Wyoming LLC and Robert has brought state law claims, there are numerous issues of Wyoming law in this case. *See* ECF No. 16 at 35. Wyoming therefore has some interest in this case being decided by an Wyoming court, making this factor weigh against transfer.

### d.  Judicial economy and practical considerations favor transfer.

"[A]ll other considerations of a practical nature that make a trial easy, expeditious and economical" are also relevant to whether a case should be transferred. *Chrysler Credit Corp.*, 928 F.2d at 1516. Two key considerations regarding judicial economy are relevant here. First, there is a risk of inconsistent verdicts, where a finding by the Maryland court could render either void or pointless major parts of the Wyoming litigation. Second, the parties and issues in the Wyoming case are substantially similar to

9

those in the Maryland case, further justifying transfer to Maryland under the first-to-file rule.

### i.  Transfer will diminish the risk of inconsistent verdicts.

There is a risk of inconsistent verdicts between the two cases here. One of the key issues in the ongoing Maryland dispute is whether Robert's dissolution of OtterSec and subsequent asset purchase was proper, with Maryland plaintiff Yao seeking a declaration that the dissolution was invalid and an order requiring Robert to disgorge all benefits obtained through his allegedly improper conduct. *See* ECF No. 9, Ex. 2 at 33–35. As Robert points out in his motion opposing transfer, Yao's requested relief does not include directly invalidating the asset purchase agreement. ECF No. 19 at 9–10. Still, Robert purchased OtterSec's claims against David as part of OtterSec's Wyoming dissolution, so invalidation of that dissolution could bear on Robert's capacity to bring OtterSec's claims in Wyoming. *See* ECF No. 19 at 9. Alternatively, a Maryland court order requiring Robert to disgorge all benefits related to OtterSec's dissolution could strip him of any damages this Court might award him from OtterSec's claims in the instant case. Any of these outcomes would result in a substantial waste of judicial time and resources in the Wyoming action, while transfer could allow the Maryland court to decide these issues more efficiently and economically.

### ii.  The first-to-file rule supports transfer.

Generally, "simultaneous prosecution in two different courts of cases relating to the same parties and issues 'leads to the wastefulness of time, energy and money.'" *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (quoting *Continental*

*Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). The first-to-file rule solves this risk of judicial waste by recognizing that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal Co.*, 673 F.2d at 1163; *Wakaya Perfection, LLC*, 910 F.3d at 1124–27. As judicial economy is a key priority of a § 1404(a) transfer analysis, it follows that courts should consider the first-to-file rule's prescriptions when simultaneous and related proceedings are ongoing in different districts and a party seeks transfer. As stated, the first-to-file rule applies based on the chronology of the events as well as the similarities in the parties, issues, and claims. *Wakaya Perfection, LLC*, 910 F.3d at 1125.

Chronology under the first-to-file rule is straightforward, with the courts' jurisdiction having attached on the date the complaints were filed. *See Hospah Coal Co.*, 673 F.2d at 1163. Here, Maryland plaintiff Yao filed her complaint on March 31, 2023, while Robert Chen filed his Wyoming complaint on September 30, 2024. ECF No. 1; ECF No. 9, Ex. 2. The Maryland court therefore had jurisdiction over its case before this Court, making the first-to-file rule chronologically appropriate.

The similarities of the parties and issues also support the first-to-file rule's application. There need only be "substantial overlap" between the two cases rather than identical characteristics. *Wakaya Perfection, LLC*, 910 F. 3d at 1126–27; *Cherokee Nation*, 724 F. Supp. 2d at 1166.

First, the parties substantially overlap. The Wyoming case is between Robert, OtterSec, and David, while the Maryland case is between Li Fen Yao (David's mother) as the administrator of Sam Chen's estate, Robert, and the two South Dakota LLCs that

Robert formed. ECF No. 16; ECF No. 9, Ex. 2. While Robert argues that he is the only party involved in both cases, the existence of additional parties does not necessarily defeat substantial similarity. ECF No. 19 at 7; *Dumanian*, 2021 WL 1210033 at *2 (D. Colo. Mar. 31, 2021). Moreover, most of the additional parties in the two cases can be collapsed for the purposes of this analysis. In the Wyoming case, Robert is the sole surviving member of OtterSec and the purported owner of its claims. ECF No. 16 at 5. In the Maryland case, Robert is the sole member of the two South Dakota LLCs (Otter Audits and RC Security). ECF No. 9, Ex. 2 at 4. For practical purposes, the Court therefore views the Maryland case as Sam Chen's estate versus Robert Chen and the Wyoming case as Robert Chen versus David Chen. Nor do David and the Estate appear to have any conflicting interests. *See Cherokee Nation*, 724 F.Supp.2d at 1170 (finding that the Cherokee Nation as a party to one case and the Nation's chief as a party to another case were substantially similar in part because they had no conflicting interests). Rather, the facts indicate that the only reason the Estate is a party to the Maryland case instead of David himself is that David was a minor at the time of OtterSec's creation and required his father to hold his interest in the company. ECF No. 16 at 7; ECF No. 9, Ex. 2 at 6. While still legally distinct, the Court views David's presence in the Wyoming case and the Estate's presence in the Maryland case as functionally similar. As such, the Court generally views the parties in the two cases as similar enough to justify applying the first-to-file rule.

   The issues in the two cases also overlap. On one hand, Plaintiff correctly states that the core claims are separate. The Maryland case centers on allegations that Robert

improperly and fraudulently dissolved OtterSec and profited from its assets, while the

Wyoming case centers on assertions that David improperly absconded with OtterSec

code and misappropriated the company's trade secrets. *See* ECF No. 16 at 35–37; ECF

No. 9, Ex. 2 at 33–35. However, the cases share important issues. The Maryland case

includes a factual dispute over David's removal of code, which is the very crux of the

Wyoming case. ECF No. 9, Ex. 2 at 16, Ex. 4 at 13; ECF No. 19 at 35–37. That Maryland

plaintiff Yao argues David's removal of code is irrelevant to the Maryland claims does

not defeat this overlap. *See* ECF No. 19, Ex. 3 at 6. Rather, the dispute over that issue's

relevance means the Maryland court *must* weigh the facts and arguments surrounding

David's removal of code, as well as its potential impacts. Doing the same in Wyoming

would be duplicative.

Moreover, as Robert himself argues in the Maryland case, David's removal of

code is relevant to OtterSec's value and may inform damages calculations in both cases.

ECF No. 19, Ex. 4 at 6; *see generally* ECF No. 9, Ex. 2; ECF No. 16. In his opposition to

transfer, Robert's very attempt to draw a line between the issues raised by David's

removal of code in the Wyoming versus the Maryland actions exposes their overlap.

Robert argues that the core issue in Wyoming is whether David's taking of code was

*wrongful*, while the only relevant consideration in Maryland is the *amount of money*

made from that code. ECF No. 19 at 8. But this line is too tenuous for a standard that

requires only similarity, not a perfect match. Should this Court determine that David's

removal of code was wrongful, it will necessarily have to decide the value of that code to

grant Robert his requested relief. Robert has already urged the Maryland court to make

the same calculation. ECF No. 19, Ex. 4 at 6, 11–12.

While neither the parties nor the issues in the two cases are identical, the first-to-

file rule requires only similarity. This standard is met here. The Court therefore concludes

that transfer to Maryland, the earlier-filed jurisdiction, will avoid duplicative litigation

and further the interests of judicial economy.

## CONCLUSION

A district court generally enjoys discretion in adjudicating motions for transfer

"according to an 'individualized, case-by-case consideration of convenience and

fairness.'" *Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Stewart Org.*, 487 U.S. at

29). Here, transfer is a close decision. With scant relation between the facts and the forum

apart from a Wyoming-registered LLC, Plaintiff's original choice to have his case heard

in Wyoming receives little deference. On the other hand, Defendant has failed to make

the necessary showing to prove that Maryland would be a more convenient forum for key

witnesses, and there is some preference that issues of Wyoming law be heard by a

Wyoming court. But on balance, Defendant has convinced the Court that exercising its

discretion to grant the requested transfer is appropriate. As Defendant asserts, "no party

resides in Wyoming … there are no witnesses in Wyoming, and there is no substantial

amount of evidence located in Wyoming." ECF No. 9 at 10. These facts alone indicate

that Wyoming is not a particularly convenient forum for *anyone* involved in this case – a

conclusion which Plaintiff does not rebut. Moreover, the risk of inconsistent verdicts and

the existence of a prior-filed and substantially similar case in Maryland leads the Court to conclude that judicial economy would be served by granting the requested transfer.

Finally, this decision does not "merely shift[ ] the inconvenience from one side to the other." *Emps. Mut. Cas. Co.*, 618 F.3d at 1165–66. Rather, Plaintiff here is already a party to the Maryland case, and moving the instant controversy to Maryland would provide *all* parties the convenience of conducting both of their cases in the same forum rather than in states some 1,500 miles apart.

Wyoming's corporate laws make it particularly easy to register an LLC, attracting entrepreneurs from around the world who seek to legitimize their businesses in the Cowboy State. But this ease – especially when combined with the constant connectivity of the Internet era – means that individuals can both form and run a Wyoming corporation without ever stepping foot under a western sky. The result is that apart from the preference that local courts decide issues of local law, there may be little substance tying litigation over certain Wyoming-registered LLCs to the Wyoming forum. This case offers a prime example of such a deficient connection. OtterSec was an entirely digital enterprise that was owned and run by two members in Washington and Maryland. Apart from the company's nominal Wyoming address, the facts of the case bear virtually zero connection to this forum. And with relevant parties as well as a closely related case already underway in Maryland, this Court sees no reason to force this litigation to remain in Wyoming.

Therefore, **IT IS HEREBY ORDERED** that Defendant's *Motion to Transfer* (ECF No. 8) is **GRANTED**. This matter will immediately be transferred to the U.S.

District Court for the District of Maryland, with all further proceedings to be determined
by that court.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Dismiss for Improper Venue* (ECF No. 24–26) is **DENIED** as **MOOT**.

Dated this __13th__ day of December, 2024.

Alan B. Johnson
United States District Judge